*203 Dissenting Opinion.
Spencer, J.
I concur in the decree so far as relates to the halt interest of defendant Davis in the property attached. He purchased from Ingraham before this suit was brought, and there is no satisfactory proof that he was cognizant of, or party to, what I think were the fraudulent acts of Wilson and Ingraham.
Fraud is a ground of nullity in contracts only as between and against parties to them. It differs in this from error or lesion, which vitiate contracts absolutely. Thus a bona fide purchaser, without notice, will not be affected by frauds perpetrated between his vendor and antecedent owners of the property.
But as to the half interest of Ingraham, I think the sale should be avoided. He was the confidential friend and adviser of Wilson, and evidently well advised as to his purposes and intentions. He was overanxious that Wilson should do the fair thing with his creditors, Sparrow & Montgomery. He sent Wilson to Sparrow a day or two before he himself bought, with instructions to offer Sparrow the property. But note the terms. Ten thousand dollars in money, and the surrender of' the notes held by Sparrow for $4000 more. This, too, at the very timeIngraham was telling F. F. Montgomery and Delany that Wilson would sell out for $7000, and was endeavoring to persuade them to join him in the purchase. F. F. Montgomery, a perfectly reliable and disinterested witness, says that he gathered from Ingraham’s conversation that Wilson was anxious to avoid, “ to get rid of ” the Sparrow & Montgomery debt, and that that was his motive for selling. True, F. F. Montgomery declined to join in the purchase, for reasons satisfactory to himself, but this in nowise breaks the force and credit of his statements as to what Ingraham said and did. Finally, Ingraham concludes to purchase alone, at nominally $10,000, of which $1000 were to be cash and the balance on long time.
He proceeded with unusual, nay, suspicious caution. When he agreed with Wilson on the price and terms he calls in Judge DeFranee, and proceeds to declare himself in substance as follows : “ I have agreed to buy Ed. Wilson’s property at such a price ; but now, Ed., if there is any fraud in this — if you are doing any thing to defraud your creditors, I won’t have any thing to do with it.” Whereupon Wilson, of course, protests his good faith, and avers that so far from selling out to defraud his creditors, he is doing so to pay them. Having thus laid the bona fides of his conduct on a sure foundation, the parties proceed to the notary to pass the act. Marl^ Ingraham’s caution here. He was determined that there should be no “ afterclaps.” Major Oliver, a prominent citizen, is requested to come in and count the money. Wilson receives the money and notes, ostensibly discounts the latter at the rate of *204 twenty-five per cent to S. W. Davis, and departs for Texas. This whole transaction between Wilson and Ingraham bears, to my mind, the brand ■of collusion upon its very front. Their whole conduct is unusual, and •evinces a degree of caution and painstaking which is not the natural production of good faith. Wilson is shown by this record to have received (if in truth he received any thing) but about $6000 cash for this property, and yet much stress is laid on his having offered it to his creditor a few days before for $14,000. So far from this offer to Sparrow proving Wilson’s good faith, to my mind it is one of the strongest evidences of the contrary.
The effect of this transaction was to put Wilson’s property beyond the reach of his creditors, if it be maintained. It was to render him, ■quoad his creditors, to all intents and purposes insolvent, and to defraud them. The rule in this matter is, that if “ the effect of the act ” is to Injure and defraud the creditors it may be avoided. C. C. 1978; 9 R. 273. Of course, if a debtor has available, tangible, seizable property sufficient to pay his debts, his creditors can not complain; but it would be a mockery of justice to say that a debtor can convert and pocket the whole of his property in money, with the avowed and known purpose of defrauding his creditors, and yet the purchaser, his adviser and co-adjutor in these acts, can defeat the revocatory action of creditors by suggesting that the debtor is not insolvent, but has more money in his pocket in Texas than his debts amount to. Our law says that when a party has sold or is about to sell, has converted or is about to convert into money his property to defraud his creditors, they may attach. If the sale, as in this case, is omnium bonorum, the law presumes fraud, and the creditors of necessity have the right to couple the revocatory action with a writ of attachment. Of course, if the revocatory action fails by reason of the good faith of, and good consideration given by the purchaser the attachment will fall; but not otherwise.
I think the sale as to Ingraham’s half should be avoided and the attachment maintained.